**Michael P. McGINN, Plaintiff–Appellant,**

·v.

**BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Corporation, Defendant–Appellee.**

No. 96–1685.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1996.

Decided Dec. 12, 1996.

John J. Kiely, Chicago, IL, Don C. Aldrich (argued), James K. Vucinovich, Yaeger, Jungbauer, Barczak & Roe, Minneapolis, MN, for Plaintiff-Appellant.

John Newell (argued), Kenneth J. Wysoglad, Michael L. Sazdanoff, Robert J. Prendergast, Wysoglad & Associates, Chicago, IL, for Defendant-Appellee.

Before CUMMINGS, BAUER and EVANS, Circuit Judges.

BAUER, Circuit Judge.

Plaintiff–Appellant, Michael McGinn ("McGinn") filed suit against Defendant–Appellee, Burlington Northern Railroad Company ("Burlington"), alleging that Burlington violated the Boiler Inspection Act ("BIA"), 45 U.S.C. § 23; the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60; and Federal Railroad Administration ("FRA") regulation 49 C.F.R. § 229.119(c). The district court granted Burlington's motions for summary judgment. We affirm.

## I. Background

McGinn worked as a brakeman for Burlington. On January 23, 1990, McGinn was working on a train en route from Cicero, Illinois to LaCrosse, Wisconsin. The engine cab was equipped with seating for a crew of four; on this particular trip, the staff also included a student engineer, who had to bring along a folding lawn chair for himself. The engine was not equipped with a luggage rack; the crew brought their luggage with them into the engine cab. McGinn placed his suitcase on the floor in front of his seat. During the course of the trip, McGinn got up to stretch on at least two different occasions. He did not look to see where his luggage was located during any of these occasions. At about 6:15 p.m., McGinn arose to use the restroom. It was dark outside by this time, and the cabin's lights were turned off so that the engineer could see the track ahead. As he walked down the stairs to the restroom, McGinn tripped when his feet became entangled in his luggage strap. The luggage lay on the floor in the same spot where McGinn initially left it. McGinn fell down the stairs, struck his back against the restroom door, and landed on the floor between the steps and the restroom. He injured his back, ribs, buttocks, and shin.

In his initial complaint, McGinn alleged that his injuries were caused by Burlington's failure to provide McGinn with a generally safe workplace as required by the FELA. More specifically, McGinn alleged that Burlington was negligent under the FELA in that: (1) it failed to provide sufficient seating and storage; (2) it assigned too many people to a locomotive not designed to carry five people; (3) it failed to adequately light the passageway to the locomotive's restroom; and (4) it failed to provide safeguards against tripping. However, when he filed a motion for summary judgment, McGinn alleged that Burlington's actions or inaction constituted a violation of the BIA. Burlington objected because McGinn had not alleged a BIA viola-

tion in his complaint. McGinn was granted leave to amend his complaint.

In his amended complaint, McGinn reiterated his negligence claim under the FELA and additionally alleged that Burlington was strictly liable under the BIA for failure to maintain its locomotive engine, parts and appurtenances in proper and safe operating condition. In particular, McGinn alleged that Burlington failed to keep the cab floor clear of "tripping hazards," which created "unnecessary peril to Plaintiff's life and limb." In response, Burlington also filed a motion for summary judgment. Burlington did not contest the accuracy of the facts surrounding the accident, but, rather, questioned their materiality. On April 14, 1994, the district court granted Burlington's motion for summary judgment on the BIA strict liability claim. However, the court allowed McGinn leave to amend his complaint "to allege an appropriate FELA claim if such a claim exists."

McGinn then filed his third amended complaint. To support his FELA claim, McGinn alleged that Burlington was negligent because: (1) it failed to provide adequate seating for the five people on board the engine cab; (2) it assigned too many people to a locomotive not designed to transport five people; (3) it failed to adequately light the passageway to the cab's restroom; (4) it failed to provide adequate safeguards against tripping; and (5) it generally failed to provide a safe workplace as required by the FELA. Burlington did not contest the accuracy of these facts, but it again questioned whether they were material as to the cause of McGinn's injuries. The district court agreed with Burlington. It noted that McGinn essentially reiterated the negligence charges and facts from his first complaint and deleted references to the BIA. On August 14, 1994, the court granted Burlington's motion for summary judgment. McGinn appealed the district court's grant of summary judgment as to both his BIA and FELA claims.

## II. Analysis

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

We review the district court's grant of summary judgment *de novo. Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991). In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The applicable substantive law will dictate which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Id.*

### B. The BIA Claim

In this case, the applicable laws are the BIA and the FELA. The BIA and the FELA are interrelated. The BIA is one of the Safety Appliance Acts ("SAA"), 45 U.S.C. §§ 1–43. Strict liability under the FELA results when a rail carrier violates the SAA. *Vaillancourt v. Illinois Cent. R.R. Co.,* 791

F.Supp. 734, 738 (N.D.Ill.1992). Thus, railroads whose employees are injured as a result of violations of the BIA will incur strict liability under the FELA. *Id.* There are two ways a rail carrier can violate the BIA. A rail carrier may breach the broad duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary peril to life or limb, in violation of 45 U.S.C. § 23, or a rail carrier may fail to comply with the regulations issued by the FRA. *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987). We will address the applicability of each possible area of liability to the present case.

First, the BIA imposes upon rail carriers an absolute duty to maintain the parts and appurtenances of their locomotives in safe and proper condition. *Lilly v. Grand Trunk W.R.R. Co.,* 317 U.S. 481, 485, 63 S.Ct. 347, 350–51, 87 L.Ed. 411 (1943). However, this does not mean that the BIA demands that liability ensue in every case in which a plaintiff alleges that a carrier's failure to install some piece of equipment on a locomotive rendered the locomotive unsafe. *Mosco,* 817 F.2d at 1091. "Parts and appurtenances" does not encompass every device that conceivably *could* be installed. *Id.* The BIA does not hold carriers liable for *failure* to install equipment on a locomotive unless the overlooked equipment (1) is required by applicable federal regulations or (2) constitutes an "integral or essential part of a completed locomotive." *Id.* (citing *Southern Ry. Co. v. Lunsford,* 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936)).

In this case, we have neither of the aforementioned situations. First, there is no applicable federal regulation which would have required that the railroad install luggage racks. Second, a luggage rack does not constitute an integral or essential part of a locomotive. Generally, the "essential or integral" argument has failed in other circuits addressing a plaintiff's "failure to install" claim. *See, e.g., King v. Southern Pac. Transp. Co.,* 855 F.2d 1485 (10th Cir.1988) (holding that armrests are not an integral or essential part of locomotive, even though

they were uniformly installed on the defendant's other locomotives and the defendant agreed to install them); *Mosco,* 817 F.2d at 1091 (holding that bars, grates or other protective window devices are not integral or essential devices); *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149 (9th Cir.1983) (holding that strobe and oscillating lights are not integral or essential warning devices); *cf. Herold v. Burlington Northern, Inc.,* 761 F.2d 1241 (8th Cir.), *cert. denied,* 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985) (agreeing with *Marshall,* but distinguishing the plaintiff's claim as not being a "failure to install" claim because the defendant had *already* installed a beacon light which later failed to work).

A luggage rack is not a mechanical component essential to the operation of a locomotive. Luggage racks do not rise to the same level of practicality or necessity as some safety devices, such as additional warning lights, which other circuits have *declined* to deem essential. Unlike the railroad in *King,* Burlington did not agree to install luggage racks on the particular locomotive nor did Burlington uniformly install luggage racks on its other locomotives. Even if Burlington had installed or agreed to install luggage racks, the court in *King* found that such actions would not automatically render luggage racks an essential part of a locomotive. Finally, we consider deposition testimony from the record that suggests that even when luggage racks were installed, engineers often did not use them. Bearing in mind the language of the BIA, case law, and the record, we cannot say that a device of convenience such as a luggage rack constitutes an essential component of a locomotive.

We now turn to the second way Burlington could have violated the BIA. The SAA encompasses not only the BIA but also safety regulations enacted by the FRA. 45 U.S.C. §§ 421–44; *Lilly,* 317 U.S. at 486, 63 S.Ct. at 351. A carrier who violates an FRA regulation will incur liability under the BIA. *Mosco,* 817 F.2d at 1091. In this case, the relevant FRA regulation, 49 C.F.R. § 229.119(c), states: "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to

provide secure footing." Thus, in the present case, any obstruction which created a "tripping hazard" in Burlington's engine cab could violate § 229.119(c) thereby violating the BIA and imposing strict liability under the FELA. *See Illinois C. Gulf R.R. Co. v. International Paper Co.*, 824 F.2d 403, 405 (5th Cir.1987).

At the outset, we note that we have not specifically addressed what constitutes a "tripping hazard" under § 229.119(c). Only one circuit court has directly addressed § 229.119(c), and it made merely a passing reference. See *Gregory v. Missouri Pac. R.R. Co.*, 32 F.3d 160, 164–65 (5th Cir.1994). But both parties employ *Vaillancourt v. Illinois Cent. R. Co.*, 791 F.Supp. 734 (N.D.Ill. 1992) to support their positions. Mindful of *Vaillancourt* and the spirit of the BIA, we consider the plausibility of each party's stance.

McGinn relies heavily on *Vaillancourt* to support his contention that his suitcase constituted a "tripping hazard." In *Vaillancourt*, the plaintiff was a railroad engineer. The locomotive's engine cab contained an ice chest which was bolted to the floor in front of the brakeman's seat. The crew had turned off the engine's interior light to avoid attracting bugs. At about 10:00 p.m., the plaintiff climbed aboard the engine and stepped around the brakeman's seat to turn on the interior light. Before he could reach the light switch, the plaintiff tripped over the ice chest. Prior to this, the plaintiff had no occasion to walk across the crew's compartment to the brakeman's side. He was unaware of the location and size of the chest before he fell over it. The railroad normally used ice chests on its engine cabs to store drinks for its employees, but these chests varied in size and location. Some chests were bolted at waist level on metal supports. The court held that because the railroad installed the chest in an area through which crew members were likely to pass, the chest constituted a "tripping hazard." *Id.* at 738.[1]

The present case is distinguishable from *Vaillancourt*. Burlington did not provide McGinn with a suitcase and then bolt the suitcase to the engine cab's floor. Here, McGinn tripped over his own loose suitcase which he himself brought on board and placed in front of his seat. McGinn did not trip over an integrated part of the engine cab. We recall that 49 C.F.R. § 229.119(c) imposes liability for failure to repair objects of which the engine cab is *comprised*, such as protruding floor boards or bolts that may create a tripping hazard. The regulation also places strict liability on a railroad for failure to keep floors free of foreign substances such as oil and grease or the elements such as snow and ice. The regulation does not encompass a crew member's luggage.

### C. *The FELA Claim*

The FELA imposes on railroads a general duty to provide a safe workplace. *Peyton v. St. Louis Southwestern Ry. Co.*, 962 F.2d 832, 833 (8th Cir.1992). To establish that a railroad breached its duty to provide a safe workplace, the plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm. *Id.* The plaintiff must then show that this breach played any part, even the slightest, in producing the injury. *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).

In reviewing a motion for summary judgment, the judge must "bear in mind the actual quantity and quality of proof necessary to support liability." *Anderson v. Liberty Lobby*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Because the plaintiff need only show slight evidence of negligence, the quantum of evidence required to establish liability in an FELA case is much less demanding than that in a standard negligence action. *Harbin v. Burlington Northern R.R. Co.*, 921 F.2d 129, 131 (7th Cir.1990). We have reasoned that "[t]he lenient standard for avoiding summary judgment under the FELA merely mirrors the pro-plaintiff stance of the substantive law." *Id.*

Leniency has its limits. The plaintiff must still present *some* evidence of negligence.

---

1. The court in *Vaillancourt* also determined that the placement of the chest on the floor, when other configurations were available, such as placing the chest at waist level on supports, could satisfy the lenient FELA standard for negligence. *Id.* The court stated that the lack of readily accessible lighting also tended to show the railroad's negligence. *Id.*

We have granted summary judgment in instances where the plaintiff has not produced even the slightest evidence of negligence. *See, e.g., Deutsch v. Burlington Northern R.R. Co.*, 983 F.2d 741, 743 (7th Cir.), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). In *Deutsch*, an employee fell while climbing down a ladder after setting the handbrake on top of a railroad car. The plaintiff alleged that the location of the brake on top of the rail car was a safety hazard and that the railroad should have equipped the ladder rungs with a non-skid surface. *Id.* at 744. We found that the plaintiff failed to introduce any evidence which suggested that the location of the brake was indeed a safety hazard or which pointed to the necessity for non-skid rungs. *Id.* We therefore held that the plaintiff failed to demonstrate the existence of a material fact from which the railroad's negligence could be inferred. *Id.*

 The case at hand is analogous to *Deutsch*. The facts which McGinn offers do not meet the FELA's lesser standard of proof. McGinn fell because he tripped over his own suitcase. The engine cab had no luggage racks. The cab's interior lights were turned off, and it was dark outside. The cab only provided seating for a crew of four, but five were on duty that night; therefore, the extra crew member brought a folding chair in which to sit. These facts are undisputed. What is disputed is their materiality.

We will address the significance, if any, of each of these facts. First, McGinn has offered no evidence that luggage racks are standard train equipment or that the need for them has ever been discussed with Burlington. There is no evidence that Burlington could foresee that the lack of a luggage rack would create a hazard. In fact, the record suggests that even if a particular car is equipped with a luggage rack, the crew does not always use it. Thus, McGinn failed to offer any evidence that Burlington had a

duty to install luggage racks or that it breached this duty. Furthermore, McGinn has presented no evidence that the lack of a luggage rack played any part in causing his injury. Second, the trial court correctly determined that the evidence does not link the lack of lights to McGinn's injury. McGinn did not fall as a result of fumbling around in the dark. Rather, he tripped over his own bag. Finally, the record reflects that the lawn chair played no part in the fall, as it was folded up at the time. Thus, these facts, even when viewed in the light most favorable to McGinn, fail to construct a genuine issue as to his FELA negligence claim.[2]

### Conclusion

Despite his efforts and a string of amended complaints, McGinn's claim did not create a genuine issue of material fact. We therefore affirm the trial court's grant of summary judgment for Burlington.

---

2. McGinn argues that the fact that he tripped over his own suitcase supports a finding of contributory negligence for his FELA negligence claim, not a grant of summary judgment. We disagree. Having found that McGinn has failed to create a genuine issue as to Burlington's negligence, we need not reach the issue of McGinn's contributory negligence. Furthermore, McGinn's tripping over his own suitcase, as a threshold matter, renders McGinn's injury outside the general purview and spirit of not only the FELA but also the BIA and 49 C.F.R. § 229.119(c).