**Ronald Lee MUNNS, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., Defendant.**

**No. 3:07CV2507.**

United States District Court, N.D. Ohio, Western Division.

Sept. 27, 2008.

926

Charles V. Contrada, Sylvania, OH, Patrick S. O'Brien, Rathmann Law Office, St. Louis, MO, for Plaintiff.

James R. Carnes, Jessica W. Straub, Anspach Meeks Ellenberger, Toledo, OH, for Defendant.

## ORDER

JAMES G. CARR, Chief Judge.

This case arises under the Federal Employers' Liability Act [FELA], *45 U.S.C. § 51* and the Locomotive Inspection Act [LIA], *49 U.S.C.A. § 20701.* Plaintiff Ronald Munns alleges that during his employment as a conductor with defendant railroad, CSX Transportation, Inc. [CSX], the locomotives on which he rode often had defective seats. Munns claims that repeated exposure to defective seats caused neck, back and shoulder injuries. Plaintiff seeks recovery under the FELA. Jurisdiction exists under *28 U.S.C. § 1331.*

Pending is defendant's motion for summary judgment. [Doc. 24]. For the reasons discussed below, defendant's motion shall be granted in part and denied in part.

## Background

Munns began his employment in 1978 as a brakeman with CSX's predecessor, Baltimore & Ohio Railroad [B & O].[1] Not long after, the B & O furloughed Munns for approximately seven to nine years. When he resumed active employment, Munns worked as a yard conductor, where his duties included throwing switches, pulling pins from railcars and adjusting draw bars to tie up railcars. His duties required walking and working on ballast.

From the early 1990s to March, 2007, Munns regularly worked as a road conductor on the "superpool," a priority train that travels 248 rail miles from Willard, Ohio, to Chicago directly. This train travels at speeds up to sixty miles per hour.

Munns rode on locomotives belonging to CSX, Union Pacific, Burlington Northern and Canadian Pacific. The locomotives' seats differed, as some had padding, armrests, higher backs and could recline. Newer wide-body engines had seats with more padding. Munns rode these newer trains about fifty-percent of the time.

Several times during his employment, Munns noted on his locomotive worksheets that "a seat was bad, the engine was rough riding, and that [it] needed to be checked out." [Doc. 25]. Munns provided CSX with these annotated worksheets.

In his 2006–2007 time-books, Munns indicated the occasions when he rode a locomotive with a "bad seat." According to Munns, a "bad seat" included seats with backs that failed to stay upright or bent to the side or which lacked armrests or adequate padding. His time-book for that period contains twenty-three instances of such notations. Although plaintiff also kept time-books recording instances of defective locomotives or seats before 2006, he no longer has these records.

Plaintiff identified the "600 series" locomotives as being particularly rough. He cannot, however, specify any particular locomotives with defective seats. He additionally specified three areas of rail with rough track: interlocking tracks, crossovers and diamonds.

Munns claims to have experienced disabling cumulative trauma injuries to his neck, back and shoulders. A herniated disc at L4 required surgery in 2005. Following his surgery, plaintiff returned to CSX for about one and one-half years. His pain continued and ultimately caused him to end his employment due to disability in March, 2007.

Munns claims that the locomotives' vibration, shaking and bouncing caused his injuries. His treating physician, Dr. Christopher Mariotti, reports a causal relationship between plaintiff's lumbar spine injury and his work exposures. Plaintiff

---

1. For purposes of defendant's motion for summary judgment, I accept plaintiff's factual allegations as truthful. *Eastman Kodak Co. v.* *Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

subsequently filed suit under the FELA and the LIA seeking compensation for his injuries.

## Standard of Review

The moving party is entitled to a judgment as a matter of law where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue as to any material fact. *Fed.R.Civ.P. 56(c).* A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As the party moving for summary judgment, CSX bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Munns' claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering CSX's motion, I must accept Munns' evidence as true and draw all reasonable inferences in his favor. *Id.* If, as the nonmoving party, Munns fails to make a sufficient showing on an essential element of his case, CSX is entitled to summary judgment as a matter of law. *Id.* at 322–23, 106 S.Ct. 2548.

## Discussion

■■■ The LIA and FELA should be read together as companion statutes. *Baltimore & O.R. Co. v. Groeger,* 266 U.S. 521, 528, 45 S.Ct. 169, 69 L.Ed. 419 (1925). The LIA supplements the FELA by imposing on interstate railroads a duty to provide safe equipment. *Id.* Because the LIA does not create an independent cause of action for personal injuries, injured parties rely on the FELA to recover damages caused by a LIA violation. *Matson v. Burlington Northern Santa Fe Railroad,* 240 F.3d 1233, 1235 (10th Cir.2001). The statutes have different standards, so that, despite their close relationship, each requires separate analyses.

## 1. The Federal Employers' Liability Act

The FELA provides, in part, that: "[e]very common carrier by railroad while engaging in [interstate] commerce ... shall be liable to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the [carrier's] negligence." *45 U.S.C. § 51.*

■■■ To recover damages under the FELA, the plaintiff's injury must occur while acting within the scope of his employment and in furtherance of the employer's interstate business. *See Green v. River Terminal Railway Co.,* 763 F.2d 805, 808 (6th Cir.1985). The employer's negligent conduct must also play a role in causing the employee's injury. *Id.*

Congress enacted the FELA as a "broad remedial statute" to assist railroad employees when an employer's negligence causes injury. *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 561–62, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). The FELA is a "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Missouri Pacific Railroad Co.,* 356 U.S. 326, 329, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). The Act is intended to be read liberally in favor of injured railroad employees. *Urie v. Thompson,* 337 U.S. 163, 180, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

## A. Munns Meets the Four Traditional Negligence Elements

■■■ To prevail on a FELA claim, plaintiffs must prove the traditional common law elements of negligence—namely, duty, breach of the duty, foreseeability of injury and causation. *Adams v. CSX Transpor-*

*tation Inc.*, 899 F.2d 536, 539 (6th Cir. 1990).

■ An employers' duty under the FELA is to provide employees with a reasonably safe workplace. *Id.* Employers breach this duty if they "knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect [their] employees." *Bowe v. Consolidated Rail Corp.*, 2000 WL 1434584, *6 (6th Cir.) (unpublished disposition). Defendant must also be able to foresee some sort of injury to plaintiff. *Adams, supra,* 899 F.2d at 539.

■ The FELA applies a relaxed standard of causation. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). The test is whether "employer negligence played any part, even the slightest, in producing the injury for which the plaintiff seeks recovery." *Id.*

■ Munns' factual allegations raise genuine issues of material fact as to all four elements. For the purposes of a summary judgment motion, Munns sufficiently asserts that CSX breached its duty of care by failing to provide its employees with a safe place to work. Plaintiff claims frequently to have ridden on locomotives with seats that would not stay upright, were bent and cocked to the side, had no armrests, or lacked padding. He also rode on rough riding locomotives.

Despite defendant's assertion otherwise, plaintiff does not argue that CSX breached its duty by failing to provide the newest and most comfortable seats. Instead, claims that requiring employees to travel long distances at great speeds on ill-equipped seats breaches the railroad's duty of care under the FELA. *See Terrell v. Soo Line Railroad Company*, 2005 WL 4882750, *5–7 (S.D.Ind.2005) (finding a question of fact as to whether inadequate

seat cushioning left the locomotive unsafe to operate without unnecessary risk of personal injury).

When Munns submitted his locomotive worksheets noting bad seats needing to be "checked out," he placed CSX on notice of a dangerous condition. This notice sufficiently presents evidence from which a reasonable jury could conclude that Munns' injury was foreseeable.

Munns also provided sufficient causation evidence to create a genuine issue of material fact, especially given the FELA's relaxed causation standard. By providing Dr. Mariotti's medical testimony establishing a causal link between his lumbar spine injury and his experience riding defective or unpadded seats, Munns sufficiently met his burden.

### B. Munns' Complaint Provided Sufficient Detail

CSX argues that Munns cannot prevail because he cannot identify exactly how the locomotives were defective, which locomotives had defective seats, or which locomotives he used prior to 2006. I disagree.

■ A general description of what caused plaintiff's injury suffices to bring a claim under the FELA. In *Tufariello v. Long Island Rail Road Co.*, 458 F.3d 80, 82 (2nd Cir.2006), a former railroad employee sued his past employer under the FELA, claiming that the locomotives' horns caused his permanent hearing damage. Plaintiff testified that the horns were "very, very loud." *Id.* at 89. In its summary judgment motion, defendant argued that plaintiff's description of the horns' volume was insufficient without an objective measurement. *Id.* The court disagreed, holding that plaintiff's claim, though general and lacking objective measurements, is sufficient to survive a motion for summary judgment. *Id.* at 90.

■ As with the hearing loss cases, Munns need not produce the specific seats which he claims were defective and contributed to his injuries. His testimony about his experiences, if credited, suffices.

The same is true with regard to the railroad's complaint that Munns cannot point to specific locomotives. That contention is off the mark for two reasons.

First, Munns's basic contention is that repeated exposure to defective seats had a cumulative effect—not that any one ride on a particular locomotive or seat caused his injury.

Plaintiff's claim in this case is similar to those of plaintiffs who allege to have incurred carpal tunnel syndrome from repeated use of general kinds of equipment. Plaintiffs can prevail in a carpal tunnel case, as they can in a hearing loss case, without having to bring in the equipment they used [or the horns they heard]. Likewise, a plaintiff claiming to have contracted cancer from exposure to toxic or other cancer inducing substances or conditions need not produce samples from all the workplaces where he encountered, or may have encountered such substances.

Second, if CSX could be found liable only if Munns could produce the actual seats and locomotives, neither he nor any other plaintiff claiming to have been injured from repeated exposure to potentially harmful conditions could ever recover under the FELA. This would disregard the statute's beneficent purposes and objectives.

Case law supports my conclusion that Munns need not point to locomotives by number or runs by date to prove his case.

Cases involving injury from repeated exposure to other potentially dangerous conditions support my conclusion. In *Tufariello, supra*, 458 F.3d at 82, plaintiff experienced permanent hearing loss after working as a mechanic in a rail yard and enduring repeated sounds of locomotive horns. The plaintiff survived a motion for summary judgment despite the fact that he failed to state exactly which locomotive sounded its horn. *Id.* at 91; *see also Maucieri v. Consolidated Rail Corp.*, 1998 WL 961397, *1 (E.D.Pa.1998) (denying defendant's motion for summary judgment in FELA case where plaintiff claimed his repeated exposure to his work duties caused carpel tunnel syndrome).

Just as the plaintiffs in *Tufariello* and *Maucieri* survived motions for summary judgment even though they did not to point to all the locomotives, equipment or other conditions to which they had been exposed over the years, Munns need not identify specific locomotives to prevail. To hold otherwise would impose more on Munns than the FELA requires.

Finally, defendant argues that plaintiff's claim fails due to his inability to produce the names of the locomotives he rode prior to 2006. Although such information would surely bolster the strength of plaintiff's claim, his failure to retain these records is not fatal. By providing his locomotive worksheets, 2006–2007 time sheet, and testimony about the 600 series locomotives, plaintiff created a genuine issue of material fact.

Defendant also argues that without specific facts, namely the specific defective locomotives, CSX cannot defend itself. Munns claims that during his employment he regularly provided CSX with locomotive worksheets noting the trips with particularly rough rides or bad seats. CSX may be in a position to retrieve these records; even if it is not, that does not matter. It will be up to the jury to determine whether to believe Munns's account of what happened to the records, or even if he ever provided them to CSX.

## 2. Locomotive Inspection Act

Congress enacted the LIA to promote the safety of railroad employees.[2] *Stierwalt v. CSX Transportation,* 2007 WL 3046456, *5 (N.D.Ohio). The LIA imposes strict liability on railroad carriers for violating the Act's safety standards. *Id.* at *3.

Three requirements must exist for the LIA to apply: 1) plaintiff must show the locomotive was "in use" at the time of the injury; 2) the locomotive must be "on [defendant's] railroad" at the time of the injury; and 3) plaintiff must prove that the condition of the locomotive created an unnecessary danger of personal injury. *Id.*

A railroad can violate the LIA by either: 1) failing to comply with regulations issued by the Federal Railroad Administration [FRA], or 2) breaching the broad duty to keep its locomotives' parts and appurtenances in proper condition and safe to operate without unnecessary danger of personal injury. 49 U.S.C. § 20701(1); *McGinn v. Burlington Northern Railroad Co.,* 102 F.3d 295, 298–99 (7th Cir.1996); *Herold v. Burlington Northern, Inc.,* 761 F.2d 1241, 1246 (8th Cir.1985).

### A. Plaintiff's Withdrawn LIA Claims

Plaintiff's original complaint alleged violations of *49 C.F.R. §§ 229.9,* 229.23, 229.63 (specific requirements) and 49 *C.F.R. §§ 229.7,* 229.45 (broad duty to maintain). In his response to defendant's motion for summary judgment, however, plaintiff conceded that CSX did not violate the specific mandates of §§ 229.9, 229.23 and 229.63 and withdrew such allegations from his complaint [Doc. 24].

Defendant asserts that plaintiff's concession operates to dismiss his FELA and other LIA claims. I disagree.

To find liability under the FELA, courts need not first establish liability under the LIA or its regulations. *King v. Southern Pacific Transportation Co.,* 855 F.2d 1485, 1489 (10th Cir.1988) (noting that the BIA supplements the FELA and "claims which cannot be maintained under the BIA are often actionable under the FELA"); *Mosco v. Baltimore & Ohio Railroad,* 817 F.2d 1088, 1092 (4th Cir. 1987). ("Although Mosco had no viable [BIA] claim based on the absence of protective devices from the windows of the locomotive's cab, it is possible that he might have stated a meritorious FELA claim based on the same facts."). FELA claims survive because equipment falling outside the LIA's parameters are still subjected to the usual rules of liability. *Southern Railway Co. v. Lunsford,* 297 U.S. 398, 402, 56 S.Ct. 504, 80 L.Ed. 740 (1936). Plaintiff's withdrawal of his LIA regulatory claims, therefore, does not preclude a finding of liability under the FELA.

Railroads complying with specific LIA regulations may still violate the Act if its locomotives' parts and appurtenances are otherwise unsafe. *Mosco, supra,* 817 F.2d at 1091. (criticizing the district court's holding that a railroad cannot violate the LIA if it complies with the promulgated regulations). Plaintiff's withdrawal of his specific regulatory challenges, thus, does not preclude a finding of liability under the LIA's broad duty to maintain.

### B. Plaintiff's Remaining LIA Claims

Plaintiff alleges that CSX operated defective locomotives with defective seats. Munns specifically complains that the locomotives' seats: 1) lacked sufficient cushion; 2) lacked arm rests; 3) bent to the side; 4) had inadequate or small back

---

**2.** The LIA is the former Boiler Inspection Act (BIA), *45 U.S.C. § 23.*

rests; and 5) did not recline or adjust. Munns further alleges: 1) the 600–series locomotives rode particularly rough; and 2) a distinct difference in ride quality between engines with rebuilt suspension systems and those without.

### 1. Failure to Install

■ The LIA requires railroads to equip its locomotives with certain parts and appurtenances. *McGinn, supra,* 102 F.3d at 299. Despite the LIA's liberal construction, railroads cannot be held liable under the LIA for failure to install equipment unless the equipment constitutes a "part or appurtenance." *Id.; King, supra,* 855 F.2d at 1488–89; *Mosco, supra,* 817 F.2d at 1088, 1091. As interpreted by the Supreme Court, "parts and appurtenances" are "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [FRA] are within the statute." *Southern Railway, supra,* 297 U.S. at 402, 56 S.Ct. 504.

■ A cab seat is a locomotive part and appurtenance, as it is prescribed by federal regulation. 49 C.F.R. § 229.119(a); *see Oglesby v. Southern Pacific Transportation Co.,* 6 F.3d 603 (9th Cir.1993). Cab seats need to be "securely mounted and braced." *49 C.F.R. § 229.119(a).* Plaintiff does not assert that the locomotives' seats were not securely mounted and braced.

The requirements of *49 C.F.R. § 229.119(a)* do not discuss seat padding, arm rests, back rests, or the ability to recline or adjust. Because the regulation does not definitely prescribe these attributes, the LIA only covers them if they are "an integral or essential part of a completed locomotive." *See Southern Railway, supra,* 297 U.S. at 402, 56 S.Ct. 504; *King, supra,* 855 F.2d at 1488–90 (responding to plaintiff's BIA claim challenging defendant's failure to provide armrests, the

court held that "only if the armrests omitted here were an integral or essential part of a completed locomotive would King have a viable BIA claim").

The court in *King* concluded that arm rests were not an essential or integral part of the completed locomotive. *King, supra,* 855 F.2d at 1488–90. Arm rests are not themselves integral to the locomotive. Moreover, though the regulation refers to seats, it does not reference arm rests. *Id.; see also Dickerson v. Staten Trucking, Inc.,* 428 F.Supp.2d 909, 914 (E.D.Ark. 2006) (finding that seat belts and floor padding are not essential or integral part to a locomotive); *McGinn, supra,* 102 F.3d at 299 (calling a luggage rack a "device of convenience" and stating that it "is not a mechanical component essential to the operation of a locomotive"). In *Herold, supra,* 761 F.2d at 1246, on the other hand, the court found that a rotating beacon was integral and essential to a completed locomotive, despite its omission in federal regulation.

Arm rests, seat padding, back supports, and the ability to recline or adjust are not integral or essential components of a locomotive. Components such as seat padding, back supports and the ability to recline are more similar to arm rests than to amber beacons, as they are additions to an already regulated appurtenance. CSX, consequently, cannot be liable under the LIA for failing to install these items.

### 2. Failure to Maintain

■ The LIA regulations also contain a broad duty to maintain equipment in good and safe working order. *See* 49 C.F.R. § 229.7 (requiring a locomotive and its appurtenances to be "in proper condition and safe to operate in the service to which they are put without unnecessary peril to life or limb"); *49 C.F.R. § 229.45* (requiring that "[a]ll systems and components on a locomotive ... be free of condi-

tions that endanger the safety of the crew . . .”). These two regulations impose upon railroads a general duty to maintain its parts and appurtenances. *See Herold, supra,* 761 F.2d at 1246; *Terrell, supra,* 2005 WL 4882750, at *4.

■ Claims that railroads have breached the duty to maintain its equipment in a good and safe manner generally arise when they have allowed a locomotive, or its parts or appurtenances to deteriorate so that the locomotive cannot operate safely. *King, supra,* 855 F.2d at 1489–90. Courts generally recognize such claims. *See, e.g., Lilly v. Grand Trunk Western R. Co.,* 317 U.S. 481, 485–89, 63 S.Ct. 347, 87 L.Ed. 411 (1943) (failure to keep ice off locomotive tender surfaces violated express I.C.C. regulation to keep surfaces clean); *see also Gowins v. Pennsylvania Railroad Co.,* 299 F.2d 431 (6th Cir.1962) (oil on locomotive walkways).

■ The duty to maintain extends to all of a locomotive's parts and appurtenances, including those not specifically proscribed by regulation, so long as the equipment is essential or integral to the completed locomotive. In *Herold, supra,* 761 F.2d at 1246, defendant voluntarily equipped its locomotives with amber rotating beacons. The railroad removed the beacon for repair, and at that time, a collision ensued. *Id.* at 1244. The court found that even though federal regulations did not require the beacon's installation, it could still be a part or appurtenance for the purpose of the Act, and thus had to be kept in good repair at all times. *Id.* at 1246.

■ Plaintiff's complaint that CSX failed to maintain its locomotives, like his complaint about failure to install, must also be divided between parts or appurtenances and other locomotive equipment. A seat is considered a locomotive part and appurtenance, as federal regulations require that it be "securely mounted and braced." *See*

*Southern Railway, supra,* 297 U.S. at 402, 56 S.Ct. 504.

■ When a locomotive's cab seat bends and cocks to the side, it becomes a danger to the employees that have to sit on it. Munns' allegation that the cab seats were "bent and cocked to the side" raises a question of material fact as to whether CSX kept its parts and appurtenances in good repair.

■ Plaintiff's other allegations regarding CSX's failure to maintain seat padding and back rests fall outside the scope of the LIA. As discussed in section B(1) above, these components are not integral or essential to the part of the locomotive. Thus, the LIA does not cover those items. *But see Terrell,* 2005 WL 4882750, at *5–7 (applying the LIA's maintenance duty to seat cushions). Though failure to maintain seat padding is not a claim in and of itself under the LIA, an inquiry into whether a seat was kept in good order and repair may include consideration of the seat's general condition, including whether it was properly padded.

■ I conclude, however, that plaintiff's contentions about locomotives that rode "rough" cannot survive defendant's motion. A jury would have to speculate as to whether this condition reflected something inherent in the locomotive, or a particular series of locomotives, apart from the recurrent problems encountered with seats on various engines. Plaintiff's related allegation about rough stretches of track, which are not locomotive appurtenances, would compound the difficulty of adjudicating this aspect of his claim.

While I conclude that plaintiff cannot recover on the basis of his contention that some locomotives rode rough, that does not preclude his ability to offer evidence that such was the case, and that such locomotives, if such was the case, aggra-

vated the effects of any damaged seats on such locomotives.

**Conclusion**

Defendant's motion for summary judgment shall be denied with regard to plaintiff's FELA claims. Defendant's motion shall be granted for plaintiff's LIA claims except those claims alleging failure to maintain locomotives' cab seats.

For the foregoing reasons, it is hereby:

ORDERED THAT defendant CSX's motion for summary judgment [Doc. 24] be, and the same hereby is granted in part and denied in part.

So ordered.