Thomas H. McCOOL, et al., Plaintiffs

v.

NORFOLK SOUTHERN RAILWAY
CORPORATION, et al.,
Defendants.

Case No. 3:11CV678.

United States District Court,
N.D. Ohio,
Western Division.

June 7, 2013.

Donald R. Harris, Sandusky, OH, for Plaintiffs.

Sheila A. McKeon, Adam P. Sadowski, Gallagher Sharp, Toledo, OH, for Defendants.

## ORDER

JAMES G. CARR, SR., District Judge.

Plaintiff brings this case under Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, and the Locomotive Inspection Act [LIA], 49 U.S.C.A. § 20701. Plaintiff Thomas McCool alleges while employed as a repair mechanic with defendant Norfolk Southern Railway Company (Norfolk Southern), he was subjected to a close range train horn blast for approximately two to four seconds. Plaintiff alleges the train horn blast caused perma-

nent health problems, including hearing loss.

Jurisdiction exists under 28 U.S.C. § 1331.

Pending is defendant's motion for summary judgment. [Doc. 41]. For the reasons that follow, defendant's motion is granted.

## Background

On April 15, 2009 McCool, who remains employed as a machinist, was working on a locomotive in the Norfolk Southern shop. The locomotive was in the building's wash rack, and catwalks were on both sides of the locomotive. The catwalks facilitate the servicing of locomotives. McCool was taking oil samples from the locomotive's engine.

McCool stood on one of the catwalks waiting for another employee to start the engine. The engine must be running to take the samples. A fellow employee accidentally blew the locomotive's horn for approximately two to four seconds as McCool was on the catwalk only a few feet from the horn. McCool wore railway issued hearing protection when the horn blew.

Norfolk Southern requires that a safety mechanism ("horn-block") be placed on locomotives while inside the service shop. Horn blocks are meant to prevent activation of the horn. The horn block, which was in place before the accident, consisted of a PVC pipe with a set screw. McCool alleges a coworker accidentally struck the horn block with a laptop computer, causing the horn to sound.

McCool claims that the two to four second horn blast caused health problems, including hearing loss and tinnitus.

Norfolk Southern conducted sound level testing that countered McCool's claim. Plaintiff filed suit under FELA and LIA seeking compensation for injuries sustained. Defendant filed a motion for summary judgment.

## Standard of Review

A party is entitled to summary judgment under Fed.R.Civ.P. 56 when the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. 2548. I accept the opponent's evidence as true and construe all evidence in the opponent's favor when deciding a motion for summary judgment. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. 2548.

## Discussion

### 1. The Locomotive Inspection Act

Railroading is and always has been a hazardous industry. Congress passed the LIA to enhance railroad employee safety. *Baltimore & O.R. Co. v. Groeger,* 266 U.S. 521, 528, 45 S.Ct. 169, 69 L.Ed. 419 (1925). The LIA establishes strict liability on railroad carriers for noncompliance with the Act's safety provisions. *Stierwalt v. CSX Transp.,* 2007 WL

3046456, *5 (N.D.Ohio) (citing *Urie v. Thompson*, 337 U.S. 163, 188–190, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)). The LIA does not provide for an independent cause of action for personal injuries. *Munns v. CSX Transp., Inc.*, 579 F.Supp.2d 924, 929 (N.D.Ohio 2008) (citing *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir.2001)). The recovery of LIA damages must be made under the FELA. *Id.*

■ A successful claim under the LIA must satisfy three requirements: 1) the locomotive was "in use" at the time of the injury; 2) the locomotive was "on [defendant's] railroad" at the time of injury; and 3) the condition of the locomotive created an unnecessary danger of personal injury. *Stierwalt, supra*, 2007 WL 3046456, *3.

#### a. "In Use"

■ Locomotives must be "in use" for the LIA to apply. 49 U.S.C. § 20701. The "in use" requirement provides railroad carriers the ability to perform preventative and corrective maintenance, as needed, on their locomotives. *Stierwalt, supra*, 2007 WL 3046456, *4.

■ Whether a locomotive is "in use" is a question of law for the district court to decide. *Steer v. Burlington N., Inc.*, 720 F.2d 975, 977 (8th Cir.1983). The location of the locomotive and actions of the injured party are important factors in determining whether the locomotive was "in use." *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 329 (4th Cir.1998).

Conflicting "in use" determinations have occurred when the trains being inspected or repaired are outside a maintenance facility. *Brady v. Terminal R. Ass'n of St. Louis*, 303 U.S. 10, 13–14, 58 S.Ct. 426, 82 L.Ed. 614 (1938) (holding that a train on a receiving track awaiting inspection was "in use"); *Trinidad v. Southern Pac. Transp. Co.*, 949 F.2d 187, 189 (5th Cir.1991) (holding that a locomotive in which a brake inspection was not yet completed was not "in use").

■ Trains already in a service garage for maintenance are, however, not "in use." *Angell v. Chesapeake and Ohio Ry. Co.*, 618 F.2d 260, 262 (4th Cir.1980) ("the case law construing the statute clearly excludes those injuries directly resulting from the inspection, repair, and servicing of railroad equipment located at a maintenance facility").

■ McCool alleges his injuries occurred while performing maintenance functions on a locomotive within the wash rack area of the train service shop. The locomotive was on a track inside the service garage with catwalks on each side. McCool stood on one of the catwalks, in preparation to take oil samples from the engine, when the train horn sounded.

The locomotive on which McCool was working is the same locomotive that sounded its horn for two to four seconds. The locomotive was inside of the service garage for inspection, and therefore was not "in use." Because the locomotive was not "in use," it is unnecessary to review the remaining two prongs required for a finding of liability under the LIA. The locomotive's "not in use" status precludes an attachment of absolute liability under the LIA. *Stierwalt, supra*, 2007 WL 3046456, *4 (citing *McGrath v. Consol. Rail Corp.*, 136 F.3d 838, 842 (1st Cir. 1998)).

#### 2. The Federal Employee Liability Act

■ Congress enacted FELA in response to the high number of employee injuries and deaths from railroad work. *CSX Transp., Inc. v. McBride*, —— U.S. ——, 131 S.Ct. 2630, 2636, 180 L.Ed.2d 637 (2011). FELA is a "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide

adequately for their own safety." *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). FELA assists in the protection of railroad employees by requiring employers to provide a "reasonably safe place in which to work." *Urie, supra*, 337 U.S. at 179, 69 S.Ct. 1018. FELA is "a remedial and humanitarian statute . . . to afford relief to employees from injury incurred in the railway industry." *Mounts v. Grand Trunk W. R.R.*, 198 F.3d 578, 580 (6th Cir.2000).

In pertinent part, FELA states:

Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

To prevail under FELA, a plaintiff need not first establish a claim under LIA or its related regulations. *Munns, supra*, 579 F.Supp.2d at 932 (citing *King v. Southern Pac. Transp. Co.*, 855 F.2d 1485, 1489 (10th Cir.1988)). Plaintiff must prove four elements for a *prima facie* FELA claim: 1) he was injured within the scope of his employment; 2) his employment was in furtherance of defendant's interstate transportation business; 3) defendant was negligent; and 4) defendant's negligence played some part in causing the injury for which the plaintiff seeks compensation under FELA. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir.2007). In this case, the parties do not dispute the presence of elements one and two.

### A. Negligence

To meet the requirement of showing negligence, McCool must "present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 259 (6th Cir.2001). *Per se* negligence is present when plaintiff proves the employer violated a railroad safety statute. *Correll v. Consol. Rail Corp.*, 266 F.Supp.2d 711, 714 (N.D.Ohio 2003) ("[I]t is well-settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute specifically aimed at the railroad industry."). Absent *per se* negligence, a plaintiff may prevail under FELA by establishing " 'traditional common law elements of negligence: duty, breach, foreseeability, and causation.' " *Borger v. CSX Transp., Inc.*, 571 F.3d 559, 563 (6th Cir.2009) (quoting *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir.1990)).

Regardless of the theory of negligence asserted, McCool must also show " 'employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought.' " *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 433 (6th Cir.2003) (quoting *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)).

### B. Causation

Congress incorporated causation language in FELA that " 'is as broad as could be framed.' " *McBride, supra*, 131 S.Ct. at 2636 (quoting *Urie, supra*, 337 U.S. at 181, 69 S.Ct. 1018). If plaintiff can show negligence " 'played any part, even the slightest, in producing the injury,' " then the railroad company is liable, even if its negligence was not " '[p]robable' " or " 'foreseeable.' " *Id.* at 2643 (quoting *Rogers, supra*, 352 U.S. at 506, 77 S.Ct. 443,

and *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 120–121, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963)). This relaxed FELA standard contrasts with the common law's "proximate cause" standard. *Id.* at 2634. But this relaxed standard "does not mean that a FELA plaintiff need not make any showing of causation." *Hardyman, supra,* 243 F.3d at 267.

 McCool contends he was subjected to a two to four second train horn blast at close range while wearing hearing protection. McCool argues that Norfolk Southern was negligent regarding the horn blast, and that the blast caused him permanent physical damage, including hearing loss. Norfolk Southern countered this assertion with an expert report completed by Mike Fann [Doc. 43].

Fann conducted a sound level study seven days after McCool was subjected to the horn blast. Fann's report concluded that if McCool was wearing the company issued hearing protection, as he claims, McCool was subjected to a sound level of 111 dba. Fann's report further noted that this level is within OSHA's permitted level of 115 dBA for 15 continuous minutes. Fann concluded the brief horn blast did not cause damage, even temporarily, to McCool's hearing.

 McCool failed to produce expert testimony showing a causal relationship between the horn blast and his hearing loss. This is, on its face, not fatal to McCool's claim. For example, expert testimony that does not directly show specific causation can still raise a jury question. *Hardyman, supra,* 243 F.3d at 268 (doctor's expert testimony, absent direct causation, provided scintilla of evidence that carpal tunnel syndrome and epicondylitis may have been caused "in any part at all" by railroad employer). McCool, however, failed to produce any expert reports supporting his case. McCool did provide several medical reports documenting past

hearing tests and their results. [Doc. 28, 28–1, 28–2]. The medical reports include tests initiated by Norfolk Southern and also those conducted by McCool's physicians. I find these reports were produced within McCool's normal course of treatment and, therefore, should be considered in the causation determination. *Fielden v. CSX Transp., Inc.,* 482 F.3d 866, 870–71 (6th Cir.2007) (expert "report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment"); *see also id.* at 869 ("[A] party needs to file an expert report from a treating physician only if that physician was retained or specially employed to provide expert testimony.") (internal quotations omitted).

McCool provided six medical reports prepared by Dr. C. Ray Prible. Dr. Prible completed the reports "in connection with the hearing conservation program of Norfork Southern Railway." The reports are dated: 1) December 16, 2003; 2) November 23, 2004; 3) July 17, 2007; 4) July 12, 2006; 5) July 17, 2008; and 6) July 15, 2009. Dr. Prible noted in each report McCool "did not show any medically related problems under current medical guidelines." Within the report dated July 17, 2008, Dr. Prible noted that McCool "had a change in the left ear at some tones." The train horn blast cited as causing McCool's hearing loss occurred almost nine months after this finding. Dr. Prible's reports contain no data associating the train horn blast with McCool's hearing loss.

McCool also produced medical reports completed by health care providers not associated with Norfolk Southern. McCool visited Dr. David G. Bailey within two months after Dr. Prible noted, in his July 17, 2008 report, that McCool had a

hearing change in his left ear. Dr. Bailey produced office notes on September 18, 2008 stating that McCool "has had a change in his hearing in the left ear starting about two months ago." Dr. Bailey further reported McCool "has developed some intermittent ringing in his left ear." These symptoms were noted prior to the close range train horn blast.

McCool provided a report completed by Dr. Roger K. Winger on November 1, 2010. Dr. Winger reported that McCool had "reported no significant hearing loss prior to [the] incident of the train whistle and no sensation of ringing." This report is inconsistent with Dr. Bailey's report from September 18, 2008 in which McCool admitted

McCool's deposition testimony fails to support the medical documentation he provided. During the deposition, McCool was asked if he was "ever told or given any documents to indicate that [his] annual hearing tests showed a change in [his] hearing in any fashion." McCool replied, "No." McCool's answer is inconsistent with the hearing test report, which he signed, on July 17, 2008. Dr. Prible's report from this date stated, "[y]ou have had a change in the left ear at some tones."

McCool was also asked during the deposition if he ever had "a problem with ringing in [his] ears" before April 15, 2009. McCool again replied, "No." This, too, is inconsistent with Dr. Bailey's September 18, 2008 report, which noted that McCool had "developed some intermittent ringing in the left ear."

■ Cases containing evidence in which the court could determine that an "employer's negligence played any part in the plaintiff's injury ... must [be sent to] the jury, even if the evidence would also allow the jury to find for the employer." *Van Gorder, supra,* 509 F.3d at 271 (citing *Gallick, supra,* 372 U.S. at 116–117, 83 S.Ct. 659). I noted in *Munns, supra,* 579

F.Supp.2d at 924, that plaintiff could survive summary judgment without an objective measurement. *See also Tufariello v. Long Island R.R. Co.,* 458 F.3d 80, 89–90 (2nd Cir.2006) (plaintiff's testimony that he was repeatedly subjected to train horns that were "very, very loud" and prevented him from hearing coworker from arm's length distance sufficient to survive summary judgment). Unlike the plaintiff in *Tufariello,* McCool based his hearing loss claim on a single train horn blow, without evidence to support his claim.

McCool failed to provide sufficient evidence his hearing loss was caused by Norfolk Southern's actions on April 15, 2009. To the contrary, McCool's evidence suggests the alleged hearing loss resulted prior to the train horn blast in question.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant Norfolk Southern's motion for summary judgment [Doc. 41] is granted.

So ordered.