J-A02014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHEILA K. MAYES AND STACEY MAYES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| TIMOTHY SHOPE, M.D., AND THE MILTON HERSHEY MED. CENTER, A/K/A PENN STATE HERSHEY MED. CENTER | |
| Appellee | No. 1310 MDA 2015 |

Appeal from the Judgment Entered July 7, 2015
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2011-CV-8598-MM

BEFORE:  PANELLA, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED MAY 24, 2016**

Appellants, Sheila K. Mayes and Stacey Mayes, appeal from the judgment entered after a jury found that the Appellees, Timothy Shope, M.D., and the Milton Hershey Medical Center, had not been negligent in treating the gastrointestinal issues suffered by Sheila Mayes. Among other arguments, Appellants contend that the trial court erred in refusing to grant a new trial after defense witnesses improperly implicated non-party medical practitioners as the cause of the issues suffered by Sheila Mayes. While we find Appellees' arguments regarding the distinction between criticism of care provided by non-party medical practitioners and allegations of malpractice

_____

[*] Former Justice specially assigned to the Superior Court.

by non-party medical practitioners unconvincing, and further that the defense expert violated the trial court's order, we conclude that Appellants received a fair, if imperfect, trial, and therefore affirm.

Appellee Timothy R. Shope, M.D., performed a laparoscopic gastric bypass on Sheila Mayes on February 15, 2008. There were no noted difficulties during the surgery, and Mayes had no complications for the first six months post-surgery. In fact, this case does not involve any factual dispute over the performance of the gastric bypass operation.

Beginning in the early fall of 2008, Mayes experienced significant abdominal pain, nausea and vomiting, often after eating meals. Mayes returned to Dr. Shope to investigate these symptoms. Dr. Shope's initial suspicion was that gallstones caused Mayes's symptoms. Based upon this diagnosis, Dr. Shope ordered an ultrasound of Mayes's gallbladder.

The ultrasound did not reveal gallstones, but Dr. Shope recommended removal of Mayes's gall bladder regardless due to his belief that gall sludge was present. Mayes agreed, and Dr. Shope removed her gallbladder on December 10, 2008.

This gallbladder surgery and its immediate aftermath forms the crux of this case. Mayes contends that she was already suffering from an internal hernia when her gallbladder was removed, or in the period shortly thereafter, and that Dr. Shope failed to rule out this serious condition. In

contrast, Dr. Shope asserts that he checked for internal hernias, and that none were present at the time of the gallbladder surgery.

Whether or not Dr. Shope properly ruled out an internal hernia, it is undisputed that Mayes returned to him with similar symptoms before the end of 2008. As a result, Dr. Shope ordered a magnetic resonance cholangiopancreatogram ("MRCP") for Mayes. The MRCP test did not reveal any cause for Mayes's symptoms.

As Mayes's symptoms continued, Dr. Shope ordered an upper gastrointestinal endoscopy to examine her esophagus, stomach, and part of the anatomy left by the gastric bypass surgery. Like the MRCP test, this test did not reveal any causal factor for Mayes's symptoms.

Mayes continued to suffer from her symptoms, and in April 2009, she presented at a local emergency room for abdominal pains. An x-ray study performed at the local hospital revealed a partial small bowel obstruction. However, the study was allegedly initially improperly evaluated as normal and Mayes was discharged without treatment. Sometime after Mayes was discharged, the study was re-evaluated and the small bowel obstruction was noted. Mayes's primary care physician was sent an updated evaluation report, but neither Mayes nor Dr. Shope were so informed.

The care provided at this emergency room visit created the primary legal dispute at issue in this case. Appellees submitted expert reports that were critical of the care provided by the emergency room professionals.

Mayes objected to this evidence, noting that the emergency room professionals had not been joined as defendants, and therefore could not respond to the criticism. The trial court sustained Mayes's objections in part, disallowing allegations of malpractice against non-present professionals, but allowing Appellees to present their criticisms of these professionals as relevant to the issue of causation.

In early September 2009, Mayes again returned to the emergency room complaining once again of excruciating abdominal pain. She was diagnosed with an internal hernia and a small bowel obstruction. Despite two surgeries, her small bowel was beyond repair. Mayes received a small bowel transplant in February 2010.

Mayes subsequently filed a complaint sounding in medical malpractice against Appellees. Pretrial discovery ensued, and trial before a jury commenced in March 2015.

As noted above, there was a primary factual issue and a primary legal issue at trial. Factually, the parties disagreed over whether the internal hernia was present when Dr. Shope removed Mayes's gallbladder. Legally, the parties argued over the proper scope of testimony and evidence regarding the care provided in the emergency room in April and September, 2009. After hearing all the evidence, the jury found that Dr. Shope had not breached the standard of care in treating Mayes, and therefore did not reach the issue of causation.

Appellants filed post-trial motions, seeking a judgment notwithstanding the verdict ("JNOV"), or in the alternative, the grant of a new trial. The trial court declined to grant a JNOV or a new trial. Appellees entered judgment on the verdict, and this timely appeal followed.

In their first issue on appeal, Appellants contend that trial court erred in failing to grant a JNOV. We review this issue according to the following standard of review.

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law and/or (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the jury could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Griffin v. Univ. of Pittsburgh Med. Center-Braddock Hosp.*, 950 A.2d 996, 999 (Pa. Super. 2008) (citing *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 304-05 (Pa. Super. 1999)).

Appellants argue that the weight of the evidence at trial was such that the jury's verdict that Dr. Shope did not breach the applicable standard of care was shocking. They correctly note that defense expert, Michael

Schweitzer, M.D., conceded that the applicable standard of care required Dr. Shope to check for internal hernias when he removed Mayes's gall bladder. *See* N.T., 3/16/15, at 261. The Mayeses further highlight the fact that Dr. Shope did not record in his operative note that he had examined for internal hernias. *See id*., at 260. They then highlight portions of Dr. Schweitzer's testimony that support their contention that Dr. Shope did not check for internal hernias. They thus contend that the only evidence that Dr. Shope performed the check for internal hernias was his testimony that it was his habit to check for them.

The trial court, in reviewing Appellants' motion for a JNOV, concluded that based on Dr. Shope's and Dr. Schweitzer's testimony, a reasonable jury could have rendered a verdict in favor of either party after trial. The trial court specifically highlights Dr. Shope's habit testimony, and Dr. Schweitzer's testimony that any internal hernia would have been obvious given the circumstances of the gall bladder removal, and concluded that it was not shocked by the verdict. After reviewing the certified record, we cannot conclude that the trial court's reasoning was an abuse of discretion. Therefore, Appellants' first argument on appeal merits no relief.

In their second issue, Appellants contend that the trial court erred in failing to grant a mistrial after the defense attempted to confuse the issues at trial by suggesting malpractice on the part of non-party medical professionals. "Our standard of review from an order denying a motion for a

new trial is whether the trial court committed an error of law, which controlled the outcome of the case, or committed an abuse of discretion." ***Polett v. Public Communications, Inc.***, 83 A.3d 205, 214 (Pa. Super. 2013) (citation omitted), *reversed on other grounds*, 126 A.3d 895 (Pa. 2015). "A trial court commits an abuse of discretion when it rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***Id***. (citation omitted).

Unless an error of law controls the outcome of a case, we will not reverse an order denying a new trial. ***See Lockley v. CSX Transportation***, 5 A.3d 383, 388 (Pa. Super. 2010). "[A] litigant is entitled only to a fair trial and not a perfect trial." ***Id***. (citation omitted).

Prior to trial, Appellees produced expert reports indicating that their experts would criticize the care provided by the emergency room professionals who cared for Sheila Mayes in April and September 2009. Appellants objected, arguing that the defense should not be allowed to assert malpractice against an "empty chair" when the defense had the opportunity to join those physicians as defendants. Furthermore, Appellants argued that if Appellees were found to have committed malpractice, any subsequent malpractice would not absolve them of liability.

Appellants noted that their allegations of malpractice centered on Dr. Shope's actions from November 2008 until February 2009. ***See*** N.T., Trial

3/2/15, at 17-21 (plaintiffs' opening statement); N.T., Trial, 3/9/15, at 46 (trial court instructing jury on the timeframe for analyzing whether malpractice occurred). Thus, they argued, any allegations of malpractice occurring after February 2009 were irrelevant.

The trial court agreed, and entered orders prohibiting defense experts from opining that non-party professionals had committed malpractice. However, the trial court recognized that the defense still had the right to contest causation, and therefore allowed the defense to present evidence indicating that the internal hernia did not occur until after the endoscopy test in February 2009, so long as the experts did not opine that non-parties had committed malpractice.

> During opening statements, defense counsel told the jury that
>
> it is the physician's conduct which you as jurors must examine and judge. Now, that is important in every case because the evidence will show that there were physicians who knew that Mrs. Mayes had been diagnosed with a partial small bowel obstruction but none of them treated it, none of them told Mrs. Mayes about it, and none of them told Dr. Shope about it.

N.T., Trial, 3/2/15, at 25. Appellants objected to this language at the close of the defense's opening statement. The trial court noted their exception for the record, but denied the request for a mistrial.

Next, during cross-examination of plaintiffs' expert, Dr. Shikora, defense counsel asked him whether Sheila Mayes had a partial bowel obstruction when she presented at the emergency room in April, 2009. *See* N.T., Trial, 3/3/15, at 95. Counsel then had Dr. Shikora's expert report

published to the jury, and said, "And, sir, here you say as part of your expert opinion in this case, for patients presenting –" before plaintiffs' counsel objected. *Id*., at 95-96. Counsel objected on the basis that defense counsel was raising the issue of malpractice on part of the emergency room professionals. *See id*., at 96-97. Defense counsel initially argued that it was admissible purely on the basis that it was in Dr. Shikora's expert report, but subsequently argued that this evidence was relevant to causation. *See id*., at 97.

The trial court ruled that the expert report should not continue to be published to the jury, and that defense counsel be limited to asking only if Dr. Shikora remained of the opinion that the partial small bowel obstruction should have been addressed "expeditiously." *Id*., at 98. Plaintiffs' counsel reiterated his objection, noting that he believed that this violated the court's prior rulings. The trial court responded that its

> prior ruling dealt with a motion in limine with a different witness. I understand where you're coming from, and this is – this is the safe ground between the two that we're – I defined for you where my strike zone is and I'm going to be consistent on both sides. This is how I found the balance between causation and not crossing over into alleged malpractice by any unnamed party.

*Id*.

Next, the Mayeses contend that the defense's radiology expert, Dr. Jaffe, suggested that the emergency room professionals had committed malpractice by failing to notify Dr. Shope. Dr. Jaffe's direct testimony contains the following passage.

Q. But in your review of medical records and films from the April study, did you see any evidence of ischemia on the *April study*?

A. So the – what you see on that is the representation of what the hollow side of it looks like when the bowel starts to become ischemic. You see the dilated and you see the thin wall and the fluid levels.

Q. Thank you.

A. Yes.

Q. Now, Dr. Jaffe, in your experience as an abdominal radiologist, or a radiologist in general, have you ever had occasion to see an abdominal CT scan that looks like this?

A. Yes, I have.

Q. And in those circumstances, what do you do when you see a scan like that?

A. So you pick up the phone and you call. You have to call the referring doc or the person of record who ordered the study and let them know that what you see on the study has direct implications in an emergent basis. So you have to – and they – you have to let the referring doc know both that the patient has a small bowel obstruction but that there's evidence of ischemia, bowel wall ischemia on the study.

N.T., Trial, 3/5/15, at 50-51 (emphasis supplied). Plaintiffs' counsel objected, arguing that once again, a suggestion of malpractice had been made. Defense counsel represented to the trial court that plaintiffs' counsel's objection would be addressed by her next question to Dr. Jaffe, which would indicate that the emergency room physicians had in fact performed as Dr. Jaffe said they should. The trial court, on this representation, indicated that

it would allow defense counsel to ask this question, and then there would be a recess. The following exchange then occurred.

> Q. Doctor, I'm showing you what has been marked as Defense Exhibit 73 … It is the radiologist report of the CAT scan you just showed us. I would like you to take a look at the second page at the bottom.
>
> You just told us that in those circumstances it would be appropriate to make a phone call to the clinician, physician. Can you tell us, please, what the [emergency room] radiologist did, in fact, do?
>
> A. The findings were discussed with [the referring doctor] at 7:55 p.m. *on 9/3/2009*. The radiologist called the physician and let them know about the findings.

*Id*., at 53 (emphasis supplied).

It is concerning that defense counsel conveniently slipped back and forth between the April and September dates. The blending of these separate issues, combined with a question about the appropriateness of conduct in September, but not in April, certainly had the effect of confusing the context and implying malpractice occurred in April. Dr. Jaffe's opinion of what should have been done on those dates does not address the issue of causation, as argued by defense counsel. None of this evidence was relevant to the admissible theory of the case set forth by the defense: that the internal hernia was not present until after February 2009. Thus, based upon this and other evidence in the entire transcript, we conclude that Appelants are correct in their assessment that defense counsel engaged in a deliberate

attempt to inject questions of malpractice against the non-party medical professionals into the jury's deliberation.

However, upon review of the entire record, we conclude that the jury was ultimately able to overcome this confusion before rendering its verdict. After retiring to deliberate initially, it is clear the jury was confused on this issue, as it returned with a request for a clarification from the trial court. The jury asked, "[s]hould our focus be on the February 2009 to April 2009 timeframe specifically…[?]" N.T., 3/9/15, at 46. Upon agreement of the parties, the trial court instructed the jury that "the pertinent area of the allegation of where the standard of care may have been breached was the timeframe leading up to February 2009 as opposed to 2009 to April 2009." *Id*. Since "the law presumes that the jury will follow the instructions of the court[,]" we conclude that the confusion sown by defense counsel did not influence the jury's verdict. *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001).

Finally,[1] Appellants contend that defense counsel injected the issue of malpractice by non-party medical professionals in her closing argument. As noted above, we agree that defense counsel, on numerous occasions,

---

[1] Appellants identify several other instances where defense counsel allegedly introduced suggestions of malpractice by the unnamed emergency room professionals. However, plaintiffs' counsel did not object during these instances of testimony, and therefore we may not grant relief based upon them on appeal.

attempted to raise this issue through testimony or argument. Furthermore, a review of defense counsel's closing argument reveals that she implied this issue:

> When was a surgeon called? I would ask you also to consider from the information on this time line that the one – *the most important piece of information to Dr. Shope and to anyone who is going to be treating Mrs. Mayes for a small bowel obstruction was … the one piece of information Dr. Shope never received … the April 27th bowel obstruction at [the emergency room.]*

N.T., Trial, 3/9/15, at 31 (emphasis supplied). However, as above, we conclude that the confusion created by defense counsel was adequately cured by the trial court's subsequent instruction to the jury. While this was not a perfect trial, it was fair to Appellants. As a result, we conclude that Appellants' second issue on appeal merits no relief.

In their third issue on appeal, Appellants argue that Dr. Jaffe's testimony at trial exceeded the fair scope of her expert report.

> Pennsylvania Rules of Civil Procedure require that an expert's testimony at trial be limited to the *fair scope* of his deposition testimony or pretrial report:
>
>> To the extent that the facts known or opinion held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, the direct testimony of the expert at the trial may not be inconsistent with or go beyond the *fair scope* of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto . . . .
>
> Pa.R.C.P. 4003.5(c) (emphasis added).
>
> . . .

- 13 -

> [I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

**Bainhauer v. Lehigh Valley Hospital**, 834 A.2d 1146, 1150-51 (Pa. Super. 2003) (citations omitted). Rule 4003.5 is intended to "prevent incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefore[.]" Pa.R.C.P. 4003.5, *Comment*.

Appellants contend that Dr. Jaffe's expert report did not encompass an opinion regarding 1) the ultrasound study performed on Sheila Mayes on December 1, 2008, or 2) the MRCP test performed on January 8, 2009. Thus, they argue, Dr. Jaffe's testimony as to the absence of any indication of an internal hernia or bowel obstruction in the results of those studies was outside the fair scope of her expert reports.

While Dr. Jaffe's expert report provides plenty to be concerned about in regard to "fudging,"[2] we conclude that Dr. Jaffe's report provided fair

---

[2] For example, Dr. Jaffe's introductory comment concludes, "[g]iven my background, I feel I am qualified to provide an expert opinion *concerning the care provided to Mrs. Sheila Mayes during and after February 2008*." Dr. Jaffe's Expert Report, at 1. (emphasis supplied). Given that defense counsel
*(Footnote Continued Next Page)*

warning that she believed that the two studies in question did not reveal indications of an internal hernia or bowel obstruction. On the ultrasound study, Dr. Jaffe opined that the "ultrasound of the gallbladder … showed a gallbladder containing sludge." Dr. Jaffe's Expert Report, at 2. Her testimony at trial did not exceed this summary. *See* N.T., Trial, 3/5/15, at 27-31.

Regarding the MRCP study, Dr. Jaffe's report notes that the "MRCP of the biliary tree was normal." Dr. Jaffe's Expert Report, at 2. At trial, Dr. Jaffe testified beyond the scope of this simple summary when she opined that the MRCP study indicated no evidence of bowel obstruction, as opposed to merely opining on the state of the biliary tree. However, her testimony did not unfairly exceed the scope of her expert report, as it is reasonable to expect that a radiology expert would have an opinion on what a radiological study revealed. We cannot conclude that the trial court abused its discretion in refusing to grant a new trial over this issue. Appellants' third issue on appeal therefore merits no relief.

In their fourth and final issue on appeal, Appellants contend that the trial court erred in failing to instruct the jury on the concept of increased risk of harm. A jury charge is adequate "unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error." ***Tincher v. Omega Flex, Inc.***,

*(Footnote Continued)* ───────────────

repeatedly argued that Dr. Jaffe's testimony was relevant to causation, not standard of care, this statement is, at the least, misleading.

- 15 -

104 A.3d 328, 351 (Pa. 2014) (citations omitted). On review, "the proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party." *Krepps v. Snyder*, 112 A.3d 1246, 1256 (Pa. Super. 2015) (citation omitted). "Further, a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Patton v. Worthington Associates, Inc*., 43 A.3d 479, 490 (Pa. Super. 2012) (citation omitted).

Appellants requested the trial court to instruct the jury, in relevant part that

> [w]here the plaintiff presents expert testimony that the failure to act or delay on the party of the defendant physician has increased the risk of harm to the plaintiff, this testimony, if found credible, provides a sufficient basis from which you may find that the negligence was a factual cause of the injuries sustained.
>
> If there has been any significant possibility of avoiding injuries and Defendant Shope has destroyed that possibility, he may be liable to Sheila Mayes.
>
> It is rarely possible to demonstrate to an absolute certainty what would have happened under circumstances that the wrongdoer did not allow to come to pass.

Plaintiff's Proposed Points for Charge, at p. 4. In contrast, the trial court instructed the jury on factual cause as follows.

In order for the plaintiffs to recover in this case, Dr. Shope's negligent conduct must have been a factual cause in bringing about the harm. Obviously, the harm is not at issue. I think everybody conceded that there was a lot of harm that resulted in damage to the small bowel that ultimately required its removal and a transplant thereafter. The goal is, is Dr. Shope's negligent conduct the factual cause in bring about that harm.

Conduct is the factual cause of the harm when the harm would not have occurred absent the conduct. To be a factual cause the conduct must have been an actual real factor in causing the harm even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection to the harm. To be a factual cause Dr. Shope's conduct need not be the only factual cause. The fact that some other causes can occur with the negligence of Dr. Shope – if indeed you find that negligence to occur – in producing the injury, doesn't relieve Dr. Shope from liability as long as his own negligence is a factual cause of the injury.

All right. That is the critical piece. It doesn't have to be the only cause. The critical part is but for any negligence or breach of duty of care that injury would not have occurred, that is the focus and that is where the law draws your attention.

N.T., Trial, 3/9/15, at 19-20.

We conclude that while the exact phrase "increased risk of harm" was not utilized by the trial court, its instruction reasonably informed the jury regarding the law of causation applicable in this case. We therefore determine that Appellants' final issue on appeal merits nor relief.

As we conclude that none of Appellants' issues merit relief, we affirm the judgment entered by the trial court.

Judgment affirmed. Jurisdiction relinquished.

Justice Fitzgerald joins the memorandum.

Judge Stabile concurs in the result.

- 17 -

J-A02014-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/24/2016

- 18 -