J-A12027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CAPPIALI AND BLUMENTHAL, P.C. AND ANTHONY CAPPIALI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| HARE NICHOLS & COMPANY, LLC, JOSEPH HARE AND JOSEPH NICHOLS | |
| ------------------------------------------------ | |
| HARE NICHOLS & COMPANY, LLC | |
| v. | |
| ANTHONY P. CAPPIALI, CPA AND CECILE R. BLUMENTHAL, CPA AND CAPPIALI & BLUMENTHAL, P.C. | |
| APPEAL OF: HARE NICHOLS & COMPANY, LLC, JOSEPH HARE AND JOSEPH NICHOLS | No. 2205 EDA 2015 |

Appeal from the Judgment Entered June 16, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): No. 2013-1033
No. 2013-902

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                        **FILED OCTOBER 13, 2016**

---

[*] Former Justice specially assigned to the Superior Court.

Appellants, Hare Nichols & Company, LLC ("HNC"), Joseph Hare, and Joseph Nichols, appeal from the judgment entered against them after a bench trial over claims arising from an aborted merger of two accounting firms. Appellants contend that the trial court erred in applying the terms of the contract to the facts established at trial. After careful review, we affirm.

Joseph Hare and Joseph Nichols are Certified Public Accountants ("CPAs") and principals in HNC. Sometime in 2006, they engaged the services of Global Force, a brokerage firm, to identify other CPA firms that they could affiliate with in order to grow their practice. Under the terms of the brokerage agreement, HNC paid an initial fee of $2,000 to Global Force. If Global Force successfully brokered an agreement between HNC and another firm, HNC would pay Global Force a fee of 10% of the average annual revenues of the other firm.

In November 2009, Global Force brokered an agreement between HNC and Appellee, Cappiali and Blumenthal, P.C. ("CB"). Appellees, Anthony Cappiali and Cecile Blumenthal, are CPAs and were principals in CB at the time. The agreement brokered by Global Force, entitled "CAPPBLUM/N&H AFFILIATION AGREEMENT" ("the Agreement"), provided for an arrangement whereby Cappiali and Blumenthal would work out of offices supplied by HNC while servicing their clients. In exchange for 60% of the income generated by Cappiali's and Blumenthal's work, HNC would cover the overhead and

staffing expenses. The remaining 40% of income would paid to CB, which would then pay Cappiali and Blumenthal according to its structure.

The Agreement also explicitly provided for the retirement of Blumenthal in twelve to eighteen months, as well the expected retirement of Cappiali in ten years. Under the Agreement, both Cappiali and Blumenthal were entitled to certain payments in exchange for a continuing prohibition on competing with HNC.

Of most importance to this appeal, the Agreement contained a clause regarding an unwinding of the affiliation, entitled "Demerger Option." Under this clause, Cappiali and Blumenthal retained the right to unwind the affiliation of CB with HNC during the first two years of the affiliation, through the provision of 90 days written notice to HNC. If either Cappiali or Blumenthal chose to end the affiliation, that person would be liable to HNC for half of the fee paid to Global Force, $13,500.

On June 6, 2011, Cappiali handed the following letter to Hare entitled "Re: Demerger."

> In light of the breaches of the Affiliation Agreement of November 16, 2009 by Hare Nichols & Company, Hare, and Nichols … including failure to pay significant monies due to Cappiali & Blumenthal, PC and the hostile work environment created by [HNC], among other issues, Cappiali & Blumenthal PC, Anthony Cappiali and Cele Blumenthal are Demerging from [HNC].
>
> We intend to work with Hare Nichols toward a fair accounting of monies due to us.

After this letter, the parties continued to negotiate their dispute, and HNC granted several requests for the delay of the date when the affiliation would be terminated.

It is undisputed that as of December 1, 2011, the affiliation had been terminated. However, HNC allowed CB to sublet space within their office while seeking a new location for CB. In February 2012, CB moved out of HNC's offices and into a new office space nearby.

Approximately one year later, CB filed a complaint against HNC asserting claims in breach of contract, unjust enrichment, and quantum meruit. Prior to being served with this complaint, HNC filed its own complaint against CB asserting claims for breach of contract, an accounting of the affiliation, and interference with business relations. Once served with CB's complaint, HNC filed an answer with new matter and counterclaim, incorporating the claims in its complaint by reference.

The cases were consolidated for a non-jury trial. At trial, Cappiali and Blumenthal both testified to HNC's failure to adequately staff during the affiliated period and to pay medical benefits. In contrast, Hare and Nichols testified to Cappiali's and Blumenthal's failure to work the number of hours required under the Agreement. At the conclusion of the trial, the trial court entered defense verdicts in both actions, essentially leaving the parties as they stood.

The trial court subsequently denied Appellants' post-trial motions and entered judgment on the verdicts. This timely appeal followed.

On appeal, Appellants argue that the trial court erred in failing to grant them a judgment notwithstanding the verdict ("JNOV") or a new trial. We review this issue according to the following standard of review.

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law and/or (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the jury could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Griffin v. Univ. of Pittsburgh Med. Center-Braddock Hosp.*, 950 A.2d 996, 999 (Pa. Super. 2008) (citing *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 304-05 (Pa. Super. 1999)). "[A]bsent an abuse of discretion, the reviewing court is bound by the trial court's credibility determinations." *De Lage Landen Financial Services, Inc. v. M.B. Management Co., Inc.*, 888 A.2d 895, 898 (Pa. Super. 2005) (citation omitted).

"Our standard of review from an order denying a motion for a new trial is whether the trial court committed an error of law, which controlled the outcome of the case, or committed an abuse of discretion." ***Polett v. Public Communications, Inc.***, 83 A.3d 205, 214 (Pa. Super. 2013) (citation omitted), *reversed on other grounds*, 126 A.3d 895 (Pa. 2015). "A trial court commits an abuse of discretion when it rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***Id***. (citation omitted).

Unless an error of law controls the outcome of a case, we will not reverse an order denying a new trial. ***See Lockley v. CSX Transportation***, 5 A.3d 383, 388 (Pa. Super. 2010). "[A] litigant is entitled only to a fair trial and not a perfect trial." ***Id***. (citation omitted).

Appellants first argue that the trial court erred in finding that Cappiali and Blumenthal had not invoked the demerger option clause with the June 6, 2011 letter. The trial court found that while the letter indicated a desire to end the affiliation, it also stated that Cappiali and Blumenthal felt that the Agreement had been breached. Furthermore, the trial court found that Cappiali and Blumenthal had established that HNC had materially breached the Agreement, and therefore they had no duty to pay the demerger option fee, or perform any other duty under the contract.

Generally, a party who has materially breached a contract may not "complain if the other party refuses to perform his obligations under the contract." ***Ott v. Buehler Lumber Co.***, 541 A.2d 1143, 1145 (Pa. Super. 1988) (citation omitted). "[A] material breach of a contract, which is vital to the existence of the contract, relieves the non-breaching party from any *continuing duty of performance* under the contract." ***Umbelina v. Adams***, 34 A.3d 151, 159 (Pa. Super. 2011) (citation omitted) (emphasis in original).

Cappiali testified that HNC did not maintain staffing levels during the time that the firms were affiliated. ***See*** N.T., Trial, 9/5/14, at 10-16. The staff provided was insufficient to allow Cappiali to do his work in a timely, professional manner. ***See id***., at 16-17. Furthermore, the lack of staffing frustrated Blumenthal's desire to retire within 18 months of the affiliation, as explicitly provided for in the Agreement. ***See id***., at 90.

Based upon this testimony, the trial court found that Cappiali and Blumenthal had established that HNC had materially breached the Agreement prior to June 6, 2011. We cannot conclude that the trial court abused its discretion in making these findings. Thus, we cannot conclude that the trial court erred in refusing to grant JNOV or a new trial.

Alternatively, HNC argues that the trial court's verdicts cannot be logically reconciled, as the trial court found that HNC's breach of the Agreement excused Appellees' duties under the contract, but did not award

Appellees any damages on their claim for breach against HNC. Verdicts enjoy a presumption of consistency. **See McDermott v. Biddle**, 674 A.2d 665, 667 (Pa. 1996). This presumption can only be overcome by showing that there is no reasonable theory that can support the verdicts. **See id**.

Here, the trial court's verdicts can be reconciled. It is plausible that while the trial court concluded that Appellees had established a material breach on the part of HNC, it found that Appellees had failed to establish that they had suffered any damages pursuant to the breach. Therefore, this argument merits no relief.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2016